## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MARC ANWAR WILLIAMS, | ) | |
| | ) | |
| Petitioner, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 21-3005-KHV |
| | ) | |
| WARDEN SHANNON MEYER, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

On May 27, 2015, in the District Court of Wyandotte County, Kansas, a jury convicted Marc Anwar Williams of one count of aggravated criminal sodomy and two counts of aggravated indecent liberties with a child.  On July 10, 2016, the trial court sentenced him to two concurrent life sentences for aggravated sodomy conviction and 66 months for aggravated indecent liberties with a child, to run concurrent.  This matter is before the Court on petitioner's pro se Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (Doc. #1) filed January 7, 2021.  For reasons stated below, the Court denies the petition and denies a certificate of appealability.

### Factual Background

The Kansas Court of Appeals set out the facts of petitioner's state court case as follows:

As a young girl, S.G. frequently visited and stayed with her grandmother. Williams, S.G.'s father, also lived there.  One day, when S.G. was 14, her grandmother discovered a 16-year-old boy alone with S.G. in her bedroom. Grandmother told S.G.'s mother of the incident.  Taking steps to address the situation, S.G.'s mother intended to take her to the doctor to see if S.G. had been sexually active.  While denying any sexual activity with the boy, S.G. feared that the doctor might find evidence of other sexual activity.

At this point, S.G. disclosed to her mother that Williams had been molesting her since she was about 8 years old.  S.G. was shaky and could not speak the words to

her mother so she wrote them on a napkin.  S.G.'s mother took her to the police department that day to report the abuse.

Officer Carl Rowland took an initial report to get the basic information without asking any specific questions.  S.G. told Officer Rowland that Williams began to fondle and sexually abuse her when she was 8 or 9 years old.  S.G. did not know specific dates, but she stated she was 14 years old the last time Williams raped her. S.G. was able to identify two instances of sexual intercourse.

Later that month, Erin Miller Weiss, a forensic interview specialist at Sunflower House, interviewed S.G.  Initially, when asked what happened, S.G. sat silently. She eventually asked if she could write down her answer.  S.G. wrote down, "my biological dad has been molesting me since I was 8."  Highly summarized, S.G. clarified that Williams had been touching her private part "that goes pee" with his hand since she was 8 years old.  After the first time Williams touched her private part, S.G. told Williams that she was going to tell her mom.  Williams held a kitchen knife to her and threatened that he would kill her and everyone she cared about if she told anyone.

Then, when S.G. was around 13, he began penetrating her.  In her words, Williams penetrated both her "private part that goes pee and her private part that goes poop with his private part that goes pee."

The State charged Williams with aggravated indecent liberties with a child, an off-grid person felony, for touching S.G.'s vagina when she was under the age of 14; aggravated criminal sodomy, an off-grid person felony, for anal copulation with S.G. when she was under the age of 14; and aggravated indecent liberties with a child, a severity level 3 person felony, for sexual intercourse with S.G. when she was 14 years old.

*The jury found Williams guilty on all counts.*

At trial, S.G.'s mother, Officer Rowland, and Weiss testified and recounted the facts as stated above.  Also, a video recording of Weiss' interview with S.G. was played for the jury.

Then, Dr. Tanya Burrell, a child abuse and neglect pediatrician at Children's Mercy Hospital who had examined S.G., testified.  She said that during the examination she was looking for anything abnormal.  She did not see any bruising or tissue tears. She found "basically . . . a normal adolescent female."

When asked, she gave reasons why an examination may be normal despite allegations of penetration.  S.G.'s last sexual contact was in 2013 and the physical examination took place in February 2014.  The doctor talked about the healing process after sexual assaults involving penetration.  The doctor concluded that S.G.'s normal exam would not be inconsistent with her previous disclosure of

penetration.

Following up on this point, the State asked if it was uncommon for the result of an examination to be normal when there was an allegation of penetration. Based on the doctor's training and experience, Dr. Burrell testified that it was not uncommon. She said most patients do have a normal exam. She testified that tissue is stretchy and tissue heals. After all, she had examined S.G. months after the last allegation of abuse.

During cross-examination, the doctor stated that she observed no tears or scars that would indicate abuse. She saw no split in the rim of the hymen, and S.G.'s hymen was normal.

S.G. also testified. Throughout the questioning by the State, S.G. did not quickly respond when asked to talk about the abuse. The State repeatedly asked S.G. what happened and S.G. gave no response. The State then asked more background questions, again asked S.G. to describe what happened, and S.G. would not respond. The record reflects there were ten instances where S.G. did not respond before she finally stated, "He touched me." S.G. eventually described how Williams touched her front private part with his hand and penetrated her front and back private parts with his front private part. She also told the jury about his threats with a knife.

Williams presented no evidence. The jury found him guilty on all counts. The court sentenced Williams to a controlling life sentence with no possibility of parole for 25 years.

State v. Williams, No. 114,962, 397 P.3d 1259 (Table), 2017 WL 2832629, at *1–2 (Kan. App. June 30, 2017).

Petitioner appealed his convictions, asserting the following grounds for relief: (1) the prosecutor committed acts of misconduct that deprived petitioner of his constitutional right to a fair trial; (2) the district court erred when it allowed the prosecutor to ask leading questions over defense counsel's objections; (3) the district court erred when it denied petitioner's motion for a new trial based on the improper testimony of Dr. Burrell; and (4) the district court erred when it improperly limited defense counsel during voir dire. The Kansas Court of Appeals affirmed petitioner's convictions and sentence. Id. at *10. Petitioner then sought review in the Kansas Supreme Court. The Kansas Supreme Court denied review.

On June 27, 2018, petitioner sought post-conviction relief in the trial court pursuant to the Kansas habeas corpus statute, Kan. Stat. Ann. § 60-1507.  Petitioner raised three issues: (1) ineffective assistance of trial counsel; (2) the state presented insufficient evidence to support his convictions; and (3) prosecutorial misconduct.  On February 21, 2019, following a preliminary hearing, the district court denied petitioner's motion for post-conviction relief.  Petitioner appealed.  His collateral appeal to the Kansas Court of Appeals raised one issue: whether the district court erred in denying his motion pursuant to Kan. Stat. Ann. § 60-1507 after conducting a preliminary hearing.  On July 24, 2020, the Kansas Court of Appeals affirmed the denial of petitioner's Kan. Stat. Ann. § 60-1507 motion.  Williams v. State, 466 P.3d 1235 (Table), 2020 WL 4249692, at *5 (Kan. Ct. App. July 24, 2020).  Petitioner did not file a petition for review with the Kansas Supreme Court.

On January 7, 2021, petitioner filed his application for federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  Repeating arguments that he made in state court, petitioner asserts the following grounds for relief: (1) the prosecutor committed acts of misconduct that deprived petitioner of his constitutional right to a fair trial, (2) the district court erred when it allowed the prosecutor to ask leading questions over defense counsel's objections, (3) the district court erred when it denied petitioner's motion for new trial based on the improper testimony of Dr. Burrell and (4) the district court erred when it improperly limited defense counsel during voir dire.

On June 1, 2021, the State of Kansas filed an Answer and Return which denies petitioner's allegations.  On July 20, 2021, petitioner filed a reply which appears to be excerpts from state court briefs and included three new grounds for relief: two ineffective assistance of counsel claims and an insufficient evidence claim.  Traverse (Doc. #15) filed July 20, 2021.  Although these issues are raised in petitioner's Traverse, such a pleading is not a proper vehicle to raise new issues.

United States v. Moya-Breton, 439 F. App'x 711, 715 (10th Cir. 2011); United States v. Harrell, 642 F.3d 907, 918 (10th Cir. 2011) ("Arguments raised for the first time in a reply brief are generally deemed waived.").

### Standards For Habeas Petitions Under 28 U.S.C. § 2254

The Court reviews a state inmate's challenge to his conviction in state court under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 19 (2013). The Court may not issue a writ of habeas corpus with respect to any claim that the state court adjudicated on the merits unless that adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;
>
> or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); see Charlton v. Franklin, 503 F.3d 1112, 1114–15 (10th Cir. 2007).

Under the "contrary to" clause, the Court may issue a writ of habeas corpus only if the state court (1) arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law or (2) decided the case differently than the United States Supreme Court on materially indistinguishable facts. Gipson v. Jordan, 376 F.3d 1193, 1196 (10th Cir. 2004). Under the "unreasonable application" clause, the Court may grant habeas relief if the state court correctly identified the governing legal rule but applied it unreasonably to the facts of petitioner's case. Williams v. Taylor, 529 U.S. 362, 407–08 (2000). The Court may not issue a writ simply because it concludes in its independent judgment that the state court erroneously or incorrectly applied

clearly established federal law; rather, the application must have been objectively unreasonable. See id. at 409–11.

The Court presumes that the state court factual determinations are correct. Martinez v. Zavaras, 330 F.3d 1259, 1262 (10th Cir. 2003). Petitioner bears the burden of rebutting this presumption with clear and convincing evidence. Id. This presumption does not extend to legal determinations or to mixed questions of law and fact. Id. That is, if the state court employed the wrong legal standard in deciding the merits of the federal issue, the deferential standard of review does not apply. Id. Ultimately, the Court's review of the state court proceedings is quite limited, as Section 2254(d) sets forth a highly deferential standard for evaluating state court rulings. Frost v. Pryor, 749 F.3d 1212, 1222 (10th Cir. 2014).

## Analysis

As noted, petitioner asserts seven grounds for habeas corpus relief: (1) the prosecutor committed acts of misconduct that deprived petitioner of his constitutional right to a fair trial, (2) the district court erred when it allowed the prosecutor to ask leading questions over defense counsel's objections, (3) the district court erred when it denied petitioner's motion for new trial based on the improper testimony of Dr. Burrell, (4) the district court erred when it improperly limited defense counsel during voir dire, (5) counsel provided ineffective assistance because he failed to impeach S.G. on her inconsistent statements, (6) counsel provided ineffective assistance because he failed to conduct a preliminary hearing and (7) the evidence was insufficient.[1] The Court addresses each claim in turn.

---

[1] Petitioner attaches to his petition a copy of the Arguments and Authorities section of his Appellant's Brief in the Kansas Court of Appeals.

## I.      Prosecutorial Misconduct

Petitioner asserts that during closing argument, by directing the jury to consider the trauma which S.G. suffered when she testified and what she lost when she made the allegations, the prosecutor committed misconduct in encouraging the jurors to decide the case based on their personal interests and sympathies.  Federal habeas relief addresses only egregious misconduct that would amount to a constitutional denial of due process.  Smith v. Phillips, 455 U.S. 209, 221 (1982).  In considering a claim of prosecutorial misconduct on federal habeas review, the question is whether the prosecutor's conduct was so egregious as to render the entire proceeding fundamentally unfair.  Short v. Sirmons, 472 F.3d 1177, 1195 (10th Cir. 2006) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 642–48 (1974)); see Smith, 455 U.S. at 219 (touchstone of due process analysis in alleged prosecutorial misconduct is fairness of trial, not culpability of prosecutor).

During closing arguments, the prosecutor stated as follows:

Now, the defense says that as soon as her grandma caught her with that boy that all the fear went away.  Well, ladies and gentlemen, you're allowed to - - your job as a juror is to determine credibility.

And one of the things that you can consider is demeanor.  And you saw [S.G.] when she testified.  Use your common sense.  Did it appear that all the fear had vanished?  Obviously she was traumatized, obviously she was having a very difficult time.  And why?  Because she was having to testify in front of the defendant, the same defendant that since she was eight years old after he touched her, he told her what would happen if she told.  Well, [S.G.] did finally tell, but she's having to face him and having - - use your common sense, is it possible that she had difficulty talking about it because she was having to face him and was worried about the fact that she did finally tell and worried about what could possibly happen to her and her family?

And, ladies and gentlemen, you can also consider motive.  What did [S.G.] gain by telling that her father had abused her?  She had to talk to police, she had to have two medical exams, she had to get up in front of strangers and talk about what had happened, she had to get up in front of the defendant who had threatened to harm her and her family, everyone she cared about if she told.  What benefit did she get from that?  And not only that, but she loved her grandmother, she loved going over

there, she loved going to see her and spending time.  Yeah, she spent time with the defendant as well, but mostly it was her grandmother that she went over.  And what did she get?  What benefit did she get?  She doesn't see - - she hasn't seen her grandma, she never - - she lost that relationship with her grandmother.  Does it make sense that she would risk all of that, lose everything?

Trial Transcript, State v. Williams, Wyandotte Cty. No. 14-cr-114, Vol. XI, at 274–75 (May 27, 2015).

The Kansas Court of Appeals found that the prosecutor did not offer a personal opinion or vouch for S.G.'s truthfulness.  Specifically, the Kansas Court of Appeals stated as follows:

Here, the prosecutor, in response to defense attacks on S.G.'s credibility, discussed factors the jury could consider to assess credibility by asking rhetorical questions.  These are not inflammatory comments.  Obviously, the jury observed S.G.'s demeanor in the courtroom and viewed her recorded interview.  It was quite apparent S.G. exhibited great difficulty in discussing the sexual abuse.  Thus, there was a factual foundation for the prosecutor's comments regarding S.G.'s demeanor and the lack of motivation to lie.

Like the trial court, we are not persuaded that the prosecutor was offering a personal opinion about or vouching for the truthfulness of S.G.  Instead, she was rhetorically attempting to persuade the jury that S.G. continued to be afraid of Williams.  We hold the prosecutor's comments were within the wide latitude given to prosecutors.

Williams, 2017 WL 2832629, at *5.

Here, the prosecutor's statements did not rise to the level of a due process violation.  When reviewing the prosecutor's statements, the Kansas Court of Appeals applied substantially the same standard as the federal rule.  The standard under Kansas law includes a two-step analysis: (1) whether the prosecutor's statement falls outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend defendant's constitutional right to a fair trial and (2) whether the error prejudiced defendant's due process rights to a fair trial.  Prejudice is assessed by applying the Chapman constitutional error standard: "Prosecutorial error is harmless if the State proves beyond a reasonable doubt that the error

complained of will not or did not affect the outcome of the trial in light of the entire record, i.e., where there is no reasonable possibility that the error contributed to the verdict." <u>State v. Sherman</u>, 305 Kan. 88, 109, 378 P.3d 1060, 1075 (2016).  Petitioner does not present any new arguments that the prosecutor's statements rose to the level of a due process violation.  The Kansas Court of Appeals' ruling on this issue was not contrary to and did not involve an unreasonable application of United States Supreme Court precedent.  Therefore, petitioner is not entitled to habeas relief on this ground.

## II.    Leading Questions

Petitioner asserts that during direct examination of S.G, the trial court erred when it allowed the prosecutor to ask leading questions over defense counsel's objection.  Specifically, petitioner argued that the district court abused its discretion when it allowed the State to ask S.G. leading questions after she had answered original questions without hesitation, which improperly bolstered S.G.'s credibility.

Habeas relief is warranted only if the alleged error was not harmless.  <u>Moore v. Marr</u>, 254 F.3d 1235, 1246 (10th Cir. 2001).  As a general matter, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence, and federal courts may not interfere with state evidentiary rulings unless the rulings in question rendered "the trial so fundamentally unfair as to constitute a denial of federal constitutional rights."  <u>Id.</u> (quoting <u>Tucker v. Makowski</u>, 883 F.2d 877, 881 (10th Cir. 1989)).  The decision whether to allow leading questions rests within the discretion of the Kansas state trial court.  <u>State v. Jones</u>, 204 Kan. 719, 727, 466 P.2d 283, 291 (1970).

During direct examination, the prosecutor asked S.G. if, prior to the alleged sodomy act, petitioner "put anything on S.G. or himself."  S.G. responded and said, "No," and the State moved

on to further questions.  Later, the State returned to the topic and asked if petitioner put anything

on either his or S.G.'s body before an alleged penetration, and S.G. responded and said, "No."

Later, the prosecutor again returned to the topic:

| | |
|---|---|
| Q. | Was–I know . . . I asked you about specific times, . . . was there anytime that Marc put anything on your body? |
| MR. LAMB: | Objection; asked and answered twice. |
| THE COURT: | Overruled. |
| Q. | Was there anytime that Marc put anything on your body? |
| A. | I don't understand your question. |
| Q. | Okay.  Did he–other than touching you with his [sic] or touching you with his hands, did he ever put any substance on your body? |
| MR. LAMB: | Objection; leading. |
| THE COURT: | Overruled. |
| A. | No. |
| Q. | Do you remember did you ever tell anybody about any hair grease or– |
| MR. LAMB: | Objection; leading. |
| THE COURT: | I'll allow it. |
| Q. | Did you ever tell anybody about any hair grease or any– |
| A. | At one point this happened and I was braiding his hair and there was grease in the room and he put grease on me because he couldn't penetrate me and the grease made it easier for him. |
| Q. | Okay.  Made it easier for him to what? |
| A. | Penetrate me. |
| Q. | What part of your body? |

| A. | Back private part. |
|---|---|
| Q. | Okay.  Do you remember that happening– |
| A. | Yes. |
| Q. | –or is it just– |
| A. | I just like I had – 'cause everything kind of like with this blurs together so sometimes it's kind of hard to separate different instances. |
| Q. | Do you remember telling someone else about that happening as well? |
| A. | Yes. |

Tr. Of Jury Trial Proceedings, <u>State v. Williams</u>, No. 14-cr-114, Vol. XI, at 216–17 (May 27, 2015).

The Kansas Court of Appeals found no abuse of discretion and stated it was reasonable under the circumstances to permit the leading questions.  Specifically, the Kansas Court of Appeals stated as follows:

> Clearly, the record here reflects that S.G. had a difficult time answering questions about the specifics of the abuse.  The State asked S.G. several times to explain what happened with no response.  The record reflects there were ten instances where S.G. did not respond before she stated, "He touched me."  Before the prosecutor asked S.G. the leading question at issue, S.G. stated that she did not understand the prosecutor's question.
>
> Under these circumstances, we find it was reasonable to permit the leading questions.  S.G. explained that the instances of abuse blurred together and that is why she did not remember the hair grease when asked about specific instances.  The defense was given the opportunity to fully cross-examine S.G. about the allegation. We find no abuse of discretion.

<u>Williams</u>, 2017 WL 2832629, at *6–7.

The only question for the Court is whether the State's use of leading questions was either contrary to clearly established federal law or constituted an unreasonable determination of the facts

in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); see Charlton v. Franklin, 503 F.3d 1112, 1114–15 (10th Cir. 2007).  The Kansas Court of Appeals' ruling on this issue was not contrary to and did not involve an unreasonable application of United States Supreme Court precedent.  Further, the record does not suggest that the district court made an unreasonable determination of the facts in light of the evidence presented.  Petitioner is not entitled to habeas relief on this ground.

## III.    Expert Testimony

Petitioner asserts that the district court erred when it denied his motion for a new trial based on the improper testimony of Dr. Burrell.  Dr. Burrell testified that a normal physical examination was not inconsistent with S.G.'s allegation of penetration.  Petitioner claims that the jury could have concluded for itself that the exam was "normal" because the alleged abuse occurred several months prior to the exam.  He argues that after Dr. Burrell testified that S.G.'s test results were "normal," she went beyond permissible opinion testimony by testifying that S.G.'s exam results were not inconsistent with the her claim that she had been repeatedly sexually abused.

Habeas relief is warranted only if the error in question was not harmless.  Moore, 254 F.3d at 1246.  Federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence, and federal courts may not interfere with state evidentiary rulings unless the rulings in question rendered "the trial so fundamentally unfair as to constitute a denial of federal constitutional rights."  Id. (quoting Tucker, 883 F.2d at 881).

The Kansas Court of Appeals held that Dr. Burrell's testimony was essential for the jury to determine whether S.G.'s exam results contradicted her testimony.  The Kansas Court of Appeals stated as follows:

> The State asked Dr. Burrell if, based on her training and experience, it was uncommon for the result of an examination to be normal when there was an

allegation of penetration. Dr. Burrell testified that it was not uncommon. She said most patients do have a normal exam. She testified that tissue is stretchy and tissue heals. She examined S.G. months after the last allegation of abuse. Dr. Burrell then began to draw a diagram of what the female anatomy looks like and continued to talk. The defense eventually objected to the narrative form of the questioning at that point. But counsel also voiced concern that Dr. Burrell was getting close to giving the ultimate conclusion, citing State v. Lash, 237 Kan. 384 (1985). The court ruled that basis for the objection was premature.

Using her diagram, Dr. Burrell explained what normal hymeneal tissue looks like. She explained that hymeneal tissue is not a sheet of tissue that tears the first time a girl has penetrative contact. "It is a rim of tissue, we expect it to be open. We saw a normal hymeneal rim of tissue on her if that's clear." A short time later, the State asked if S.G.'s normal exam would be inconsistent with her disclosure of prior penetration. Dr. Burrell responded, "No." At that point, the defense objected based on Lash. The court overruled the objection.

In our view, Dr. Burrell's testimony was admissible to assist the jury in understanding the material evidence. As the trial court aptly said, some jurors expect that in cases involving penetration of young females, there must be tearing or some other physical evidence of sexual intercourse. Dr. Burrell merely explained that was not the case.

We note that defense counsel, by reminding the jury that S.G. had "a completely normal intact hymen" in closing argument, did exactly what Dr. Burrell's testimony was designed to preempt. Dr. Burrell's testimony aided the jury in evaluating whether S.G.'s "intact hymen" necessarily precluded her contention that Williams had penetrated her.

Williams, 2017 WL 2832629, at *7–8. Further, the court held that Dr. Burrell did not express an opinion on whether petitioner had penetrated S.G. or commented on S.G.'s credibility. Id. at *8.

The decision of the Kansas Court of Appeals was not contrary to federal law or based on an unreasonable determination of the facts in light of the evidence presented in the trial court. Accordingly, petitioner is not entitled to relief on this ground.

## IV.    Voir Dire

Petitioner argues that the district court erred when it improperly limited defense counsel during voir dire. He argues the limitation inhibited defense counsel from properly discovering the biases and prejudices of potential jurors. A federal habeas court traditionally accords broad

deference to trial courts in determining jury selection procedures and conducting voir dire.  <u>Lucero</u> <u>v. Kerby</u>, 133 F.3d 1299, 1308 (10th Cir. 1998).  Under Kan. Stat. Ann. § 22–3408(3), the trial court "may limit the examination by the defendant, his attorney or the prosecuting attorney if the court believes such examination to be harassment, is causing unnecessary delay or serves no useful purpose."

The Kansas Court of Appeals stated as follows:

During voir dire, defense counsel asked if anybody was married to a police officer. There were no responses.  Later, defense counsel asked, "Okay, we have a pretty small county here actually.  Does anybody have any relatives, close relatives who– or you that you didn't put down on the questionnaire employed by anybody in the Unified Government or the courthouse?"

This prompted a long exchange between the court and defense counsel outside the presence of the panel where the court clearly wanted to speed things up:

| "THE COURT: | I have twice cautioned Mr. Lamb about attempting to solicit information during his voir dire that is, in fact, contained in the questionnaires that the jurors fill out and that both counsels received at about, oh, when did you get them, about 10:00 o'clock this morning or a little bit after and have from that time until noon or so to review.   And Mr. Lamb apparently is unhappy with the court exercising its authority both under statute and case law to control voir dire. |
|---|---|
| | So, Mr. Lamb, what's your problem? |
| MR. LAMB: | Judge, my problem is I've been asking these same questions for 15 years.  And for some reasons I'm asking about uncles, cousins, other relatives that are not remotely on the–on the list about whether they have close relationship with police officers.  And we ask that because maybe they are influenced by or come from a law enforcement family that is not reflected. |
| THE COURT: | I let you ask that question and there weren't any hands.  You asked that question. |
| MR. LAMB: | I didn't even get the question out. |
| THE COURT: | Yeah, you did. |

-14-

| | |
|---|---|
| MR. LAMB: | And as far as–I just don't understand, Judge. I don't know, I seem to have always had a problem with voir dire in your court in the few times that I've shown up here. I don't know if it goes back 15 years ago when I filed a mandamus, I don't know. I don't know, Judge, I– |
| THE COURT: | Mr. Lamb, Mr. Lamb, now you're getting personal and out of control and you– |
| MR. LAMB: | I just want to know. |
| THE COURT: | And you should refrain from doing so. Quite frankly, your experience in this court or your experience over the last 15 years in any other court has absolutely nothing to do with this trial or any other trial. It is clearly, clearly within the bounds of this court's authority to set guidelines and limits and to control voir dire . . . I don't believe asking people if they have relatives that work for the Unified Government is in any way relevant to any of the triable issues in this case. The Unified Government contains all kind of departments that don't have anything to do with the issues involved in this case." |

The jury questionnaire asked about spouse's employment, but not the employment of other relatives.

Defense counsel's question about whether anybody had relatives that worked for the Unified Government was indeed broad. It is entirely unclear how the answer would assist counsel in determining a potential bias, prejudice, or interest. Further, Williams does not explain how the question served a useful purpose and he did not then ask a less broad question. Also, Williams does not explain how he was prejudiced by the voir dire limitation set by the court.

We find no abuse of discretion here.

Williams, 2017 WL 2832629, at *9–10.

Here, the trial court judge referenced Kan. Stat. Ann. § 22–3408(3) in explaining why he had the authority to limit defense counsel's questioning. The Kansas Court of Appeals' ruling on this issue was not contrary to and did not involve an unreasonable application of United States Supreme Court precedent. Petitioner is not entitled to habeas relief on this ground.

## V.     Ineffective Assistance Of Counsel

In his reply brief, which is not a proper vehicle to raise new issues, petitioner raised two ineffective assistance of counsel claims.     United States v. Moya-Breton, 439 F. App'x 711, 715 (10th Cir. 2011); United States v. Harrell, 642 F.3d 907, 918 (10th Cir. 2011) ("Arguments raised for the first time in a reply brief are generally deemed waived.")  Thus, the Court finds that petitioner waived his ineffective assistance claims.  However, even if petitioner had properly presented the claims, they are without merit.

In his reply, Petitioner asserts that trial counsel provided ineffective assistance because he did not (1) impeach S.G. on her inconsistent statements and (2) conduct a preliminary hearing. Petitioner raised these claims in his K.S.A. § 60-1507 motion and the trial court summarily rejected them.  He appealed, and the Kansas Court of Appeals determined that he was not entitled to an evidentiary hearing on whether counsel provided ineffective assistance.  Williams v. State, No. 121,327, 466 P.3d 1235 (Table), 2020 WL 4249692, at *5 (Kan. App. July 24, 2020).  The Kansas Court of Appeals affirmed.  Id.

To show ineffective assistance, petitioner must demonstrate that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance resulted in prejudice to his defense.  Strickland, 466 U.S. at 687–88.  The Court's review is "doubly deferential" in that it takes a highly deferential look at counsel's performance under Strickland, through the deferential lens of Section 2254(d).  Cullen v. Pinholster, 563 U.S. 170, 190 (2011) (citations omitted).

### A.     Impeaching S.G.

Petitioner asserts that trial counsel, Charles D. Lamb, provided ineffective assistance because he failed to impeach S.G. about her inconsistent statements during cross-examination.

Petitioner argues that his counsel should have been more explicit in his efforts to challenge S.G.'s credibility. The district court found no credible evidence to establish that counsel provided ineffective assistance. The Kansas Court of Appeals affirmed and determined as follows:

> The district court found there was "no credible evidence" to establish Lamb was ineffective as Williams' defense counsel. We agree. Lamb testified about Williams' competency, their defense strategy, his investigative efforts including those that included expert involvement and possible testimony, and his strategic reasons for his approach to cross-examining S.G. Williams did not refute any of Lamb's testimony. Lamb's testimony is a record of an attorney trying to create a defense. We will not second-guess his strategy. This record displays Lamb's exercise of professional judgment—not a lack of effort.
>
> In fact, Williams does not argue that Lamb was deficient. He testified that Lamb accomplished what he could while cross-examining S.G. While Williams thought Lamb could have done more, he conceded he did not know. Williams also does not claim that Lamb's performance fell outside the broad range of reasonable professional assistance, nor does he claim that Lamb's approach to cross-examining S.G.—a child—was not an appropriate strategy. Nor does Williams claim that he was prejudiced by Lamb's cross-examination of S.G.
>
> We see no reason to reverse and remand for more evidence on Lamb's effectiveness as defense counsel.

Williams, 2020 WL 4249692, at *4.

Petitioner does not explain why the reasoning of the Kansas Court of Appeals was an unreasonable application of United States Supreme Court precedent or contrary to Supreme Court precedent. The Kansas Court of Appeals' ruling on this issue was not contrary to and did not involve an unreasonable application of United States Supreme Court precedent. Petitioner is not entitled to habeas relief on this ground.

   B.   <u>Preliminary Hearing</u>

Petitioner asserts that trial counsel provided ineffective assistance because he failed to request a preliminary hearing so that he could use testimony at such a hearing to cross-examine the State's witnesses at trial. Petitioner raised this argument in his state habeas petition, but the

district court rejected it.  The Kansas Court of Appeals affirmed and stated as follows:

> Lamb testified he always consults with his clients about whether they want to waive their preliminary hearing.  He testified that in this case, he recommended waiver because the State was considering adding counts against Williams but would not do so if Williams waived his right to a preliminary hearing.  Lamb did not expect S.G.'s testimony to change, but—if warranted—he had what he needed to impeach her testimony with her prior statements made to Sunflower House and others.  Lamb testified he knew the State had enough evidence to bind Williams over for trial and he did not want to risk another potential life sentence.  He said it was strategically better to defend against known charges.  Lamb testified he discussed this strategy with Williams and Williams agreed.  Lamb did not recall if Williams was taking medication at the time.  He recalled Williams did not appear to be under the influence of drugs, unable to communicate, or unable to understand the situation
>
> ***
>
> Williams claimed he did not want to waive his right to a preliminary hearing, but Lamb told him he should waive to avoid the other possible charges.  He said he did not commit any crimes, but he did not know if he waived his preliminary hearing voluntarily or was "pushed into it."  He "didn't feel no type of way about it."

Williams v. State, 2020 WL 4249692, at *2, *4.  As stated above, the appellate court further held that on the record before it, defense counsel exercised professional judgment and strategy, not a lack of it, and that it would "not second-guess" his strategy.  Id. at *4.

The Kansas Court of Appeals' ruling on this issue was not contrary to and did not involve an unreasonable application of United States Supreme Court precedent.  Petitioner is not entitled to habeas relief on this ground.

## VI.     Sufficiency of the Evidence

As with petitioner's ineffective assistance of counsel claims, the Court rejects his insufficient evidence claim because he first raised the issue in his reply brief.  Harrell, 642 F.3d at 918 ("Arguments raised for the first time in a reply brief are generally deemed waived.").  However, even if petitioner properly presented the claim, it is without merit.

In his reply brief, petitioner argues that the evidence at trial was insufficient to support his

-18-

conviction on all charges.  Specifically, he argues that S.G.'s testimony was inconsistent and contradictory, which is insufficient to sustain a conviction.    Petitioner raised this issue in his motion under Kan. Stat. Ann. § 60-1507, which the trial court summarily denied.  Williams, 2020 WL 4249692, at *3.  The trial court found that his claim of insufficient evidence was an issue for direct appeal, which was inappropriate for a motion under Section 60-1507.  Id.  The Kansas Court of Appeals affirmed.  Id. at *5.

Both Kansas and federal law apply the following standard for insufficient evidence: whether evidence had been admitted at trial that in its unrebutted and uncontradicted form would have allowed reasonable jurors to reach its verdict.  State v. Adkins, 2011 WL 1196906, at *2 (Kan. Ct. App. Mar. 25, 2011) (citing State v. Hayden, 281 Kan. 112, 132, 130 P.3d 24, 38 (2006) (standard of review on appeal whether viewed in light most favorable to prosecution, rational factfinder could have found guilt beyond reasonable doubt)); see Jackson v. Virginia, 443 U.S. 307, 318–19 (1979) (evidence sufficient to support criminal conviction if viewing evidence in light most favorable to prosecution, rational factfinder could have found essential elements of crime beyond reasonable doubt).

Petitioner argues that the evidence is inconsistent for the following reasons: (1) when the police initially contacted S.G., she said that her father engaged in sexual intercourse with her on two occasions, but in her Sunflower House interview, she claimed that it occurred more frequently, (2) S.G. had opportunities to report the incidents to her grandmother and did not, which proves that she was comfortable with her father, (3) S.G. testified that she enjoyed going to her grandmother's house, which proves that she was comfortable around her father and (4) her physical examination was normal.  Traverse (Doc. #15) at 7–19.

The district court found that petitioner's insufficient evidence claim was inappropriate for

a Section 60-1507 motion.  Petitioner did not raise the issue on direct appeal, so he is not entitled to federal habeas corpus review because he failed to exhaust his claim in state court.

### Conclusion

For the reasons discussed, the Court concludes that petitioner has not established any instance where the state proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Further, the record conclusively shows that petitioner is not entitled to relief.  Accordingly, no evidentiary hearing is required.  See United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1998).

### Certificate Of Appealability

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Pursuant to 28 U.S.C. § 2253, the Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the Court indicates "which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 484 (2000).  In addition, when the court's ruling is based on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its

procedural ruling." Id.

The Court concludes that a certificate of appealability should not issue in this case.  Nothing suggests that the Court's ruling resulting in the dismissal of this action is debatable or incorrect. The record does not suggest that the Tenth Circuit Court of Appeals would resolve the issues in this case differently.

**IT IS THEREFORE ORDERED** that the Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (Doc. #1) filed January 7, 2021 is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability as to the ruling on defendant's Section 2254 petition is **DENIED**.

Dated this 27th day of October, 2021 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge